[No. 421-3.   Division Three.   July 28, 1972.]

BLAINE HINDERER *et al., Appellants,* v. JACK RYAN
*et al., Respondents.*

*Wallis W. Friel* (of *Irwin, Friel & Myklebust*), for appellants.

*John G. Layman,* for respondents.

GREEN, J.—This is an action for breach of implied warranty of merchantability brought by Blaine and Kenneth Hinderer, d/b/a Hinderer Bros., against the marital communities of Jack Ryan and William Dippel. From a jury verdict in favor of the defendants, plaintiffs appeal.

In February 1968, defendant Jack Ryan, a hog buyer, contacted plaintiff Blaine Hinderer, a hog breeder, to see if Hinderer was interested in buying bred sows. On February 20, 1968, after a personal inspection of the sows in question, Hinderer agreed to purchase the sows. Plaintiff planned to sell the sows and their litters rather than keeping the sows as breeding stock. Defendant Ryan was to hold and care for the sows until March 9, 1968, when Hinderer would be ready to take delivery. At that time, Hinderer again inspected the sows and discovered that three of them had the scours. These sows were not purchased by plaintiff.

Plaintiff, after consulting with a veterinarian, purchased 37 other bred sows from defendants and hauled them to his farm where they were separated from other animals. The evidence showed that it was customary in the trade to keep newly purchased animals separate from one's own herd to minimize the possible effect of a latent disease. It was agreed that plaintiff would keep the bred sows for a week and if he was not satisfied with the purchase he could return them to defendant. Thereafter plaintiff took two bred sows from his own herd, located 2½ miles away, and placed them with the purchased sows, intending to sell these two sows along with the others after their litters were born.

The first litter came on March 16, 1968 from one of plaintiff's own sows. The next day the litter began to scour and later died. These sows became very sick. A veterinarian called to plaintiff's farm diagnosed the condition as T.G.E., a swine disease especially fatal to baby piglets. Litters born to other sows also had scours and resulted in the death of the piglets. In view of this situation, and for purposes of immunization, the plaintiff's veterinarian counseled plaintiff to proceed with a process whereby the dead piglets were fed in solution to the remainder of the herd, including other bred sows located elsewhere on the farm. Thereafter, these bred sows and their litters developed scours resulting in high fatalities among the piglets.

Plaintiff brought this action to recover damages for the losses incurred, alleging defendants' breach of implied warranties of merchantability and fitness for particular purpose with respect to the bred sows purchased from defendant Ryan. It is plaintiff's position those sows were infected with T.G.E. at the time of purchase which was transmitted to the rest of his herd and caused substantial financial loss to plaintiffs.

First, it is contended that instruction No. 11 was erroneously given because there was no evidence in the record to support it and, when given with instruction No. 10, con-

fused and misled the jury. It is unnecessary for us to determine whether there was sufficient evidence for the giving of instruction No. 11 because we find that instruction No. 11, in the form that it was given, did create confusion in light of instruction No. 10 and could have misled the jury.

Instruction No. 10 submits the issue of implied warranty of merchantability under RCW 62A.2-314 to the jury by stating:

In a sale of goods such as that which occurred in this case, there is an implied warranty by the seller that the goods shall be merchantable. By this we mean that the goods are fit for the ordinary purposes for which such goods are used. A breach of warranty may be established without proof of negligence on the part of the defendant.

Immediately following is instruction No. 11, submitting the issue of implied warranty of fitness for a particular purpose under RCW 62A.2-315:

You are instructed that if a buyer does not rely on the seller's skill or judgment to select or furnish suitable goods, but instead exercises his own judgment in selecting them, then there is no implied warranty that the goods shall be fit for any particular purpose.

Reading these two instructions, the jurors might reasonably conclude that only one type of implied warranty is involved. The only indication that two separate types of warranties are to be considered is the "ordinary purpose" language in instruction No. 10 and the "particular purpose" language in instruction No. 11. This is insufficient clarification to inform the jury that two separate and distinct warranties—with different proof requirements—are being defined. In reading these two instructions, a juror could erroneously conclude that the defendants could *not* be found liable for breach of implied warranty of merchantability as defined in instruction No. 10 unless they also found that plaintiff relied on the seller's skill and judgment in selecting pigs, as required by instruction No. 11. Reliance is not an element of the warranty of merchantability. See RCW 62A.2-314. It is an element of the warranty of fitness for a

particular purpose. *See* RCW 62A.2-315. The jury was never told that these were separate warranties and a breach of either warranty was sufficient to fix liability upon the defendants.

Because instruction No. 11 creates the possibility of the jury being misled into believing that reliance was an element not only of the warranty of fitness for particular purpose but also the warranty of merchantability, we find the giving of the instruction to be erroneous and requires reversal. *See Crowley v. Barto*, 59 Wn.2d 280, 367 P.2d 828 (1962); *Patterson v. Wenatchee Canning Co.*, 53 Wash. 155, 101 P. 721 (1909); 53 Am. Jur. *Trial* § 555 at 440; 5 Am. Jur. 2d § 813 at 254. Upon retrial, if the evidence justifies the giving of both instructions, care should be given that the two warranties are clearly distinguished in the court's instructions and the jury told that proof of a breach of one or both warranties will impose liability upon defendants.

Plaintiff next argues the trial court erred in failing to submit his proposed instruction No. 17[1] to the jury in that without such an instruction the jury may have erroneously concluded that the isolation and right of plaintiff to return the sows after 1 week excluded a recovery for breach of warranty. We do not agree. The proposed instruction is not proper because it requires the court to decide that the oral agreement precludes a recovery for breach of warranty. The evidence does not compel that conclusion as a matter of law. Whether or not the warranty was limited by the oral agreement was a question of fact for the jury. No other instruction to which error is assigned was proposed or given in this area.

Finally, plaintiff contends that contributory negligence is not a defense to an action for implied warranty and the court erred in instructing the jury to the contrary. This

[1]"Both parties admit that there was an agreement that plaintiff would take delivery of the pigs, isolate them for one week, and at the end of the week have the right to return them if he was not satisfied. You are instructed that such an agreement would not limit the rights and remedies provided by law, but would exist in addition to such rights and remedies."

position would be correct if this were a personal injury case. *See Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969); *Stark v. Allis-Chalmers,* 2 Wn. App. 399, 467 P.2d 854 (1970). Whether this rule is applicable in property damage cases has not yet been decided in this state and is the subject of divergent views elsewhere. *See* 4 A.L.R.3d 503, § 2 (1965); 1 Anderson, Uniform Commercial Code § 2-314:23-27 (2d ed. 1970).[2] It is unnecessary to decide this issue for reasons hereinafter indicated.

It is our view that an instruction on contributory negligence was error. The only evidence urged by the defendant in support of contributory negligence consists of the commingling of the two purebred sows with the purchased sows and the subsequent attempt to immunize the balance of the herd. The only basis for defendants' liability in warranty is plaintiff's claim the purchased sows were infected at the time of purchase. The alleged contributory negligence does not affect this issue; rather, it presents a factual question going to mitigation of damage. The jury was properly instructed on this issue. Instruction No. 18.[3] Defendant also urges that plaintiff was contributorially negligent in that he personally selected the sows after having knowledge a portion of the herd had the scours. This con-

[2] It should be noted that improper use of a product is a defense to an action for breach of warranty under either RCW 62A.2-314(2)(c) or RCW 62A.2-315. *See* 1 Anderson, Uniform Commercial Code § 2-314:26 (2d ed. 1970). Instructions couched in terms of contributory negligence but involving misuse of products have been upheld. See 1 Anderson, Uniform Commercial Code, *supra.*

[3] "In fixing the amount of money which will reasonable and fairly compensate the plaintiff, you are to consider that a person whose property or business is damaged must exercise ordinary care to minimize existing damages and to prevent further damage. If any loss is proximately caused by a failure to exercise such care, damages cannot be recovered for such loss."

tention does go to the issue of liability, but was adequately and more properly covered by instruction No. 12.[4]

Reversed and remanded.

MUNSON, C.J., and EVANS, J., concur.

---

[4]"If a buyer before making a purchase has examined the goods as fully as he desired, there is no implied warranty from the seller as to defects which a reasonable examination ought in the circumstances to have revealed. The examination or refusal to examine will not, however, relieve the seller from liability for defects which could not have been discovered by a reasonable inspection."